UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DONALD E. BENSON, MARYLAN
J. BENSON, and DONALD BENSON
FAMILY LLC

        Plaintiffs,

   v.

CREST ENERGY, INC., et al.,

        Defendants.

NO. CIV. S-04-1249 FCD EFB

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on defendant Crest Oil & Gas Management Corp.'s ("Crest")[1] motion for summary judgment, or alternatively, partial summary judgment, with respect to plaintiffs Marylan J. Benson and the Donald Benson Family LLC's

///

///

---

[1] Plaintiff voluntarily dismissed defendant Edwin P. Horan, III on December 22, 2004. The other named defendants, Crest Energy, Inc., Crest Oil Natural Gas Management Corp., and NQ TX Quibono, are also represented by Crest's counsel bringing the instant motion but are not named as movants on the motion. In its motion, Crest describes that it is the successor in interest to defendant Crest Energy, Inc.

1

("plaintiffs")[2] second amended complaint ("SAC").[3]  By the motion, Crest seeks adjudication in its favor as to plaintiffs' claims for (1) breach of contract; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) accounting; and (5) unfair business practices (Cal. Bus. & Prof. § 17200 *et seq.*).

Plaintiffs oppose the motion, primarily arguing they need additional time for discovery to adequately oppose the motion. Alternatively, plaintiffs argue that as to each of their causes of action, they raise triable issues of fact sufficient to warrant denial of Crest's motion.[4]

As to plaintiffs' request for additional discovery, this is plaintiffs' *second* such request under Federal Rule of Civil

---

[2] Plaintiff Donald Benson, who died subsequent to the filing of this action, was dismissed as a plaintiff pursuant to the court's order of January 5, 2006.  Fed. R. Civ. P. 25 (permitting dismissal of a deceased party if a substitution of parties is not filed within 90 days of the filing of a notice of suggestion of death).

[3] Also pending before the court is plaintiffs' application for appointment of a receiver, filed August 1, 2006 (Docket #58).  (Minute Order, filed Aug. 2, 2006 [declining to hear plaintiff's motion *ex parte*, as plaintiffs requested, and deferring motion so as to hear it in conjunction with Crest's pending motion for summary judgment].)  However, because the court finds herein in favor of Crest on its motion, plaintiffs' motion is moot.  Plaintiffs' action against Crest is hereby dismissed in its entirety, and thus, plaintiffs have no grounds to seek appointment of a receiver.  Additionally, to the extent plaintiffs seek to strike Crest's answer and/or its counterclaim against them via their application for appointment of a receiver, the motion is likewise denied.  Plaintiffs' motion to strike is not only procedurally improper but it fails to provide any factual or legal basis or even argument as to why such relief is warranted.

[4] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

2

Procedure 56(f) ("Rule 56(f)") in response to the instant motion. Crest originally filed its motion on July 18, 2006, setting the matter for hearing on August 18, 2006. (Pursuant to the Court's Pre-Trial Scheduling Order of July 22, 2005, the last day to hear dispositive motions was August 24, 2006.) Plaintiffs responded, moving for a continuance of the motion and time for additional discovery under Rule 56(f). Specifically, plaintiffs sought to depose Crest's president, Edwin P. Horan, III ("Horan"). The court granted plaintiffs' request for a continuance of the motion under Rule 56(f). (Minute Order, filed Aug. 22, 2006.) However, as to the requested discovery, Crest opposed the deposition, and the matter was heard by the magistrate judge, who ultimately granted both parties additional depositions. (Order, filed Sept. 27, 2006.)[5]

As a result of that order, this court further continued the hearing on Crest's motion for summary judgment and permitted the parties to file supplemental memoranda of points and authorities to address the additional discovery. (Minute Order, filed Sept. 27, 2006.) However, in their supplemental opposition, plaintiffs once again request time for further discovery.[6] Now, plaintiffs assert that Crest's president, Horan, did not produce at his deposition all records relevant to the subject wells' production;

---

[5] Plaintiffs were permitted to depose Horan, and Crest was permitted to complete the deposition of plaintiff Marylan Benson and to conduct the deposition of Laura Quinn, the designated, person most knowledgeable regarding the Donald Benson Family LLC.

[6] Other than asserting the need for different discovery, plaintiffs brief and supporting papers are nearly verbatim of their original opposition.

3

1  however, Horan testified he did not have any other records.
2  Nonetheless, plaintiffs maintain they need additional time to
3  obtain from "governmental agencies" the relevant documents,
4  although plaintiffs fail to describe the precise documents sought
5  or why such documents could not have been obtained during the
6  normal course of discovery.
7      Plaintiffs' request for a further continuance and additional
8  discovery is wholly without merit; the court has given plaintiffs
9  ample time to conduct discovery in this matter.  Indeed,
10 discovery closed in this nearly three-year old case on June 30,
11 2006.  Plaintiffs did not move to re-open discovery but instead
12 waited until their opposition to Crest's motion for summary
13 judgment, filed on the eve of the dispositive motion cut-off, to
14 request additional discovery under Rule 56(f).  Despite the
15 arguably untimely request, the court granted plaintiffs their
16 requested relief, continuing the hearing on the motion for
17 summary judgment and modifying the pretrial scheduling order to
18 allow the magistrate judge to hear plaintiffs' motion to compel.
19 (Minute Order, filed Aug. 22, 2006.)  That motion was granted and
20 plaintiffs were permitted to conduct further discovery.  Now
21 plaintiffs want more but without offering *any* justification.
22 Their request is denied, and the court, therefore, resolves
23 Crest's motion on the merits.
24     For the reasons set forth below, Crest's motion for summary
25 judgment is GRANTED.  Plaintiffs offer little, if any, evidence
26 ///
27 ///
28 ///

in response to the motion,[7] and the little evidence proffered fails to raise a triable issue of fact.

**BACKGROUND**

Edwin P. Horan, III, President of Crest, met Donald and Marylan Benson at the "Money Show," an annual investment conference in Orlando, Florida in February 1999. At the conference, Crest was one of approximately 50 start-up companies, including approximately 11 oil and gas companies, who presented information regarding their respective companies. (Horan Decl., filed July 18, 2006, ¶ 4.)

As alleged in the SAC,[8] plaintiff Marylan Benson ("Mrs. Benson") and plaintiff Donald Benson Family LLC (the "Family LLC") entered into the following written agreements with Crest: (1) A February 5, 1999 agreement with the Family LLC for one unit, totaling $58,482.00 for three wells (Logan Creek #5, Willows WWH #2, Ramona "Black" #18); (2) A February 5, 1999 agreement with Mrs. Benson for one unit, totaling $58,482.00 for three wells (Logan Creek #5, Willows WWH #2, Ramona "Black" #18);

---

[7] Indeed, nowhere in plaintiffs' papers do they cite to the relevant evidence; instead, they simply make conclusory arguments in their opposition and cite only generally to certain declarations in response to Crest's statement of undisputed facts. (See e.g., Pls.' Opposing Stmt., filed Aug. 18, 2006, stating "DENY – SEE DECLARATION OF LAURA QUINN.") On this basis alone, the court could grant Crest's motion as plaintiffs have failed to comply with both the Federal Rules of Civil Procedure and this court's local rules for summary judgment motions. Nevertheless, the court has reviewed all of plaintiffs' submissions and renders its decision herein on the merits of the evidence presented.

[8] Plaintiffs originally filed this action in February 2004 in the Superior Court of California, County of Glenn. Defendants removed the action to this court on the basis of diversity jurisdiction.

5

and (3) A January 1, 2000 agreement with the Family LLC for an assignment of a 6.8% working interest in the Northwest Grimes ("NWG") Well #2 for $50,000.00. (SAC, filed Oct. 27, 2004, 3:1-15.)[9] Plaintiffs allege that by these agreements, they purchased interests in three oil and gas wells being developed by Crest, Logan Creek #5, Willows WWH #2, and Ramona "Black" #18, as well as an assignment of an interest in NWG Well #2. (Id. at 3:16-18.)

In accepting participants who invest in an oil and natural gas well project, Crest provides certain information regarding the project. (Crest's Stmt. of Undisputed Facts ["UF"], filed July 18, 2006, ¶ 7.)[10] The terms of the well projects in which

---

[9] Two other agreements were alleged to have been entered by Donald Benson with Crest; however, as Donald Benson has been dismissed as a plaintiff in this action, those agreements are no longer at issue in this action.

[10] Plaintiffs' response statement is Docket #75; the court, however, does not cite herein to said statement as plaintiffs failed to repeat the entirety of Crest's statement, including the citations to Crest's evidence, and did not in response provide *any* citation to their evidence. Nevertheless, as set forth below, in all material respects, the court finds the facts as described in this "background" to be undisputed. While plaintiffs purport to dispute various facts stated herein, their sole "evidence" is the declarations of Larry Rothman, their attorney, and Laura Quinn, Donald and Marylan Benson's daughter, a Michigan attorney who has served as the Manager of the Family LLC since November 2004. Neither of these declarations, however, provides admissible evidence relevant to the motion.

On that ground, Crest objects to the declarations (Docket #s 82, 83) and its objections are sustained for the following reasons: Mr. Rothman's declaration provides no evidence related to the facts of this case; instead, his declaration and supporting exhibits detail the parties' various discovery disputes which are not relevant to the instant motion; therefore, his declaration is properly excluded. Ms. Quinn's declaration must also be wholly excluded as it is inadmissible for lack of personal knowledge and/or is inadmissible hearsay evidence. Ms. Quinn was not a party to the various agreements at issue nor was she manager of the Family LLC at the time of the

6

plaintiffs sought to participate were enumerated in a Private Placement Memorandum ("PPM"), entitled "1999 California Oil and Natural Gas Drilling Program." (Horan Decl., Ex. E.) The PPM provides that any agreement between Crest and a participant is not a partnership or joint venture. (UF ¶ 6.) All proposed participants are required to return a signed "Working Interest Participating and Turnkey Drilling Agreement" ("Drilling Agreement"), which must be accepted by Crest, along with the participant's "Advanced Sums," due pursuant to the PPM and Drilling Agreement. (UF ¶ 22.) This must occur prior to the commencement of drilling operations and payment must accompany the executed agreements. (UF ¶ 25.)

Crest provided plaintiffs with all information required by the PPM and Drilling Agreement. (UF ¶s 5, 7.) Plaintiffs had the opportunity to review the information and ask questions prior to making a decision to participate but chose not to do so. (UF ¶s 7, 9.) Plaintiffs were not induced to invest by anyone at Crest. (UF ¶ 33.) Moreover, no one at Crest told plaintiffs their investments would result in economic gain or that they should expect any specific return on their investments, nor did Crest's written documents make such representations. (UF ¶s 32, 34.) Plaintiffs do not believe that anything in Crest's literature was misleading. (UF ¶ 35.)

---

subject events, and thus, she has no personal knowledge of the events in question. (Ex. M to Brod Decl., filed Nov. 9, 2006 at 54:16-22 [Ms. Quinn concedes she does not "have personal knowledge" of the events in question as she was "not involved in the investments back at the time"].) Additionally, her various statements about what her parents were told by Crest or did in relation to the drilling agreements is inadmissible hearsay evidence.

7

Once accepted as a participant, under the terms of the Drilling Agreement, a participant has full and complete access to the drill site, logs and other information gained by the drilling of the well. (Horan Decl., ¶s 8-9.) As "Operator," under the Agreement, Crest provides notifications of participants' elections, summaries of operations and drilling, and other relevant tasks concerning the well on a periodic basis as warranted by the ongoing situation. During 1999 and 2000, Crest provided such reports by group e-mails and on occasion in 1999 only, the reports were also available through a voice-recorded report, activated by a code which was provided to all participants, including plaintiffs. (UF ¶ 5.) In addition, under the Drilling Agreement, a participant had the right to audit Crest's records at its office, "insofar as such records directly related to the activities conducted under this Agreement." However, at no time, did plaintiffs request any such audit. (UF ¶ 8.)

As to the actual drilling, the PPM and Drilling Agreement allow Crest to determine the "final site and manner of drilling" and to substitute wells if Crest deems it necessary to do so. Additionally, Crest is entitled to terminate the drilling of any well, and any return of the participant's "completion funds" is made only at the participant's election. (UF ¶ 10.) During 1999 and 2000, Horan was responsible for making these determinations on behalf of Crest. (Horan Decl., ¶ 14.)

In this case, the drilling of the Logan Creek #5 Well was delayed by the flooding of the drill site for rice cultivation. During this time, a similar well tested uneconomic, which

8

adversely impacted the expectations for the Logan Creek #5 Well. As a result, Horan made the decision to substitute the Logan Creek #5 Well for the Weldgen-Eddins ("WE") #2 Well and notified plaintiffs of the substitution. Plaintiffs did not object nor did they ask for the return of any funds. (UF ¶ 11.) The WE #2 Well was drilled and completed in March 2001 but never produced in commercial quantities. The well was subsequently plugged and abandoned according to applicable regulations. (UF ¶ 19.)

The Willows WWH #2 Well was drilled and completed in January 2000, and it also never produced in commercial quantities. The well was subsequently plugged and abandoned according to applicable regulations. (UF ¶ 20.)

As to the Ramona Black #18 Well, Crest determined that pursuing the drilling would be unwise due to the poor performance of an earlier drilled well, the Black 17 Well. Crest decided to substitute the Kroutch Well for the Ramona Black #18 Well. Horan personally notified plaintiffs of the substitution and provided plaintiffs with a revised PPM, detailing the Kroutch Well. Plaintiffs did not object to the substitution or ask for the return of any funds. (UF ¶ 17.) The Kroutch Well was drilled and completed in November 1999 but also did not produce in commercial quantities. The well was subsequently plugged and abandoned according to applicable regulations. (UF ¶ 19.)

Finally, Crest commenced drilling of the NWG #2 Well in December 1999. (UF ¶ 27.) In August 2000, the well began production into a sales pipeline. Payment for the production was sent in October 2000. Subsequently, Crest inadvertently issued checks, made payable to Donald Benson on October 31, 2000,

January 4, 2001, January 31, 2001, February 28, 2001, and March 31, 2001 in the total amount of $301,258.74 for the production relating to this well. (UF ¶ 30.) However, plaintiffs' Drilling Agreement for this well was dated January 1, 2000 and was not received by Crest until May 2001. (UF ¶ 28.) As the drilling of the NWG #2 Well had begun prior to receipt and acceptance of plaintiffs' agreement for the well, plaintiffs were not entitled to any proceeds from this well. (UF ¶s 27, 28, 29.) Crest never accepted plaintiffs' agreement. Upon receipt of the agreement in May 2001, Crest realized its mistake in sending the participation amounts to Donald Benson, and Horan contacted Donald Benson via telephone, explaining the error and requesting Mr. Benson return the proceeds. Mr. Benson refused to do so. (UF ¶ 30.)[11]

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); see <u>California v. Campbell</u>, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. See <u>Lopez v. Smith</u>, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

///

---

[11] For the reasons described below, the facts regarding the NWG #2 well are not at issue on this motion, and thus, the court makes no findings herein regarding the parties' dealings concerning this well. These facts are described only to provide a complete understanding of plaintiffs' claims and Crest's arguments.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. See Nissan Fire & Marine, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**ANALYSIS**

**1.   Donald Benson Family LLC**

Crest moves to dismiss all claims asserted against it by the Family LLC on the ground that as a foreign (Michigan) corporation who is not qualified to do business in California, it cannot maintain the instant action. California Corporations Code § 2203

requires any foreign corporation transacting business in the State to hold a valid certificate from the Secretary of State. Absent such a certificate, said corporation may not maintain an action in this state. Cal. Corp. Code § 2105. Here, Laura Quinn, manager of the Family LLC, testified that she did not believe the Family LLC was qualified to do business in California or that any attempts to qualify were made by the company. (Ex. M to Brod Decl., filed Nov. 9, 2006, at 55:11-24.) Additionally, Crest's attorneys searched the California Secretary of State's website and did not find a certificate of qualification on file for the Family LLC. (Brod Decl., filed July 18, 2006, ¶ 8.)

Therefore, as there is no evidence the Family LLC is authorized to transact business within California, its claims against Crest must be dismissed. Summary judgment in Crest's favor is accordingly granted with respect to all claims as asserted by the Family LLC. As such, the court's discussion below of the substantive claims pertains to plaintiff Marylan Benson only.

### 2. **Breach of Contract**

As alleged in the SAC, Mrs. Benson asserts Crest breached the PPM and Drilling Agreements[12] by (1) "failing and refusing to provide [her] with the agreed upon financial information and reports concerning the wells and any production of the wells;" (2) "by substituting other wells for those set forth in the terms of the Agreements;" and (3) by failing to pay all sums due and

---

[12] As Mrs. Benson is the only remaining plaintiff with viable claims, the only agreement at issue is her agreement with Crest, described above, involving the Logan Creek #5, Willows WWH #2, and Ramona "Black" #18 wells.

12

owing from the wells' production.  (SAC at ¶ 11.)

As to the first alleged breach, Crest proffers evidence that it complied with all requirements of the PPM and the Drilling Agreements, providing plaintiffs with the information required by the agreements' terms.  (UF ¶s 4-9.)  Mrs. Benson, on the other hand, provides no evidence in rebuttal.  She does not provide a declaration in response to the motion, and she testified at deposition that she could not articulate what was sought in this lawsuit or why the lawsuit was filed in the first instance.  (Ex. L to Brod Decl., filed Nov. 9, 2006, at 14:11-23, 24:6-14; 28:1-15.)  Because Mrs. Benson has no evidence in support of her allegations, summary judgment in favor of Crest must be granted as to this basis for her breach of contract claim.

As to Mrs. Benson's claim that Crest breached their agreement in substituting wells, again Crest proffers evidence that it complied with the agreement's terms.  After determining, in its discretion, that well substitutions were necessary under the particular circumstances, it informed Mrs. Benson of the substitutions, and she did not object or ask for a return of her investment.  (UF ¶s 10-14.)  Like above, Mrs. Benson fails to proffer any evidence in rebuttal.  As such, Crest is entitled to summary judgment as to this issue as well.

Finally, as to Mrs. Benson's third basis for this cause of action, she alleges in the SAC that she has "learned through other sources that at least three and possibly all of [the] wells are still active and producing but [she has not] received [f]urther monies on account of such production."  (SAC at 4:5-10.)  Crest submits evidence describing how each of the subject

13

wells, Logan Creek #5, Willows WWH #2 and Ramona "Black" #18, was either drilled or substituted for another well which was drilled, how each well performed (none ultimately produced in commercial quantities), and how each well was plugged and abandoned according to applicable regulations. (UF ¶s 15-30.) Again, Mrs. Benson offers no evidence to support her allegation that any monies were due, let alone, still owing from these wells. Accordingly, summary judgment in favor of Crest is granted as to this basis for her breach of contract claim as well.

### 3. Intentional and Negligent Misrepresentation

Defendants move for summary judgment as to Mrs. Benson's claims for intentional and negligent misrepresentation on the ground that she has no evidence Crest made any false representations to plaintiffs regarding their investments. To establish a claim for either intentional or negligent misrepresentation, plaintiff must establish, among other things, that Crest made a misrepresentation of fact. R & B Auto Center, Inc. v. Farmers Grp., Inc., 140 Cal. App. 4th 327, 377 (2006).[13]

In the SAC, Mrs. Benson alleges Horan represented that plaintiffs could expect to be paid royalties from the wells, and that the projects were a "good sound investment." (SAC ¶ 17.) However, in her deposition, Mrs. Benson testified:

///

---

[13] The elements of a claim for intentional misrepresentation are a misrepresentation, made with knowledge of its falsity and with an intent to defraud or induce reliance, justifiable reliance, and resulting damage. A claim for negligent misrepresentation requires proof of each of the foregoing elements except for knowledge of the falsity of the representation; honest belief in the truth of the statement, without a reasonable ground for that belief, is sufficient. Id.

14

(1) she did not know of any statements made by Crest, written or oral, that turned out to be false (UF ¶ 35; Ex. L to Brod Decl., filed Nov. 9, 2006, 13:17-14:10);

(2) No one at Crest made any promises to her, personally, and she had no knowledge of any promises made to anyone else, that the investments would result in economic gain (UF ¶ 34; Ex. L to Brod Decl. at 27:12-20);

(3) she could not state that any documents provided by Crest were misleading or unclear (UF ¶ 35; Ex. L to Brod Decl. at 10:9-11:22); and

(4) she was not induced by anyone at Crest to invest (UF ¶ 33).

On the basis of this testimony, Mrs. Benson cannot establish, as a matter of law, a prima facie case for intentional and/or negligent misrepresentation as she has no evidence of a misrepresentation of fact by Crest. Therefore, her claims are dismissed.

**4.   Accounting**

By this cause of action, Mrs. Benson seeks an accounting based on the rights and obligations as provided for in the PPM and Drilling Agreements. Specifically, Mrs. Benson complains that Crest "never accounted for the principal of the Plaintiffs or provided the Plaintiffs with tax information K 1 or 1099." (Opp'n, filed Aug. 18, 2006, at 16:25-26.) However, other than this blanket statement in her opposition, Mrs. Benson provides no evidence to support her entitlement to such an accounting or information as described in the relevant agreements with Crest, nor does she provide any evidence that said information was not,

15

in fact, provided by Crest.  As stated above, Mrs. Benson does not submit a declaration in opposition to the motion, and there are no documents submitted by her counsel in support of this claim.  Likewise, she provided no relevant testimony at her deposition.

Contrary to Mrs. Benson, Crest has provided *undisputed* evidence that it complied with all terms of the agreements regarding disclosures and reports to plaintiffs, and that plaintiffs failed to invoke their rights under the agreements to audit Crest's records should they have desired to do so.  (UF ¶s 5, 7, 8.)

Therefore, based on the undisputed facts and lack of *any* evidentiary showing by Mrs. Benson in support of her allegations, the court grants summary judgment in favor of Crest on this claim.

### 5. **Unfair Business Practices**

California Business and Profession Code § 17200 *et seq.* prohibits unlawful, unfair or fraudulent business practices, as well as unfair, deceptive, untrue or misleading advertising. Here, Mrs. Benson's claim is based on the same allegations as her claims for breach of contract, misrepresentation and accounting. As those claims are dismissed, her unfair business practices claim, based on those claims, also cannot succeed.  She has proffered no evidence in support of this claim, and therefore, Crest is entitled to summary judgment.

///
///
///

**CONCLUSION**

For the foregoing reasons, Crest's motion for summary judgment is GRANTED in its entirety. Plaintiffs' related motion for appointment of a receiver is denied as moot.

IT IS SO ORDERED.

DATED: December 1, 2006

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE